UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

BENJAMIN BRILEY FARMER,               )
                                      )
              Plaintiff,              )
                                      )
v.                                    )        No.:   1:21-CV-153-TAV-SKL
                                      )
HOWARD L. UPCHURCH,                   )
J. CURTIS SMITH,                      )
DANIEL H. RADER IV, and               )
STACY H. FARMER,                      )
                                      )
              Defendants.             )

## MEMORANDUM OPINION

This matter is before the Court on the motions to dismiss filed by defendants Attorney Daniel H. Rader, IV [Doc. 24], Judge J. Curtis Smith [Doc. 28], Judge Howard L. Upchurch [Doc. 34], and Stacey H. Farmer [Doc. 36].  Also before the Court is Attorney Rader's motion to withdraw the portion of his motion to dismiss that relies on Federal Rule of Civil Procedure 12(b)(5) [Doc. 55].  Plaintiff has not responded to any of these motions, and the time for doing so has expired.  *See* E.D. Tenn. L.R. 7.1(a).  For the reasons stated below, the Court will **GRANT** defendants' motions to dismiss [Docs. 24, 28, 34, 36], and this action will be **DISMISSED**.  Because the Court finds dismissal appropriate under Federal Rule of Civil Procedure 12(b)(6), Attorney Radar's motion to withdraw his service-of-process argument [Doc. 55] is **DENIED as moot**.

## I. Background

In his complaint, Plaintiff states that he seeks to bring an action pursuant to 42 U.S.C. § 1983 for deprivation of his civil rights based on the "deliberate indifference" to his needs, in violation of the Eighth and Fourteenth Amendments, and under state law for conspiracy and fraud [Doc. 1 ¶ 1]. Plaintiff alleges that Stacey Farmer and Attorney Rader "committed an act of fraud by presenting false and/or misleading information to the Court in an effort to deprive Plaintiff [] of real property and to damage his relationship with his three minor children by limiting the Plaintiff's parenting time" in violation of state law [*Id.* ¶ 6]. Additionally, plaintiff states that Judge Upchurch and Judge Smith "conspired in this action due to their inappropriate communications and ultimate Order of the 12th Circuit Court of Tennessee depriving Plaintiff [] of his residence and parenting time with his three minor children" [*Id.* ¶¶ 5–6]. Plaintiff asserts, without further detail, that all defendants acted under color of state law [*Id.* ¶ 9].

Plaintiff contends that "the conduct of each defendant was pursuant to and in execution of a conspiracy by the Defendants to financially harm the Plaintiff and to hurt him mentally and emotionally" and all defendants "exhibited deliberate indifference to Plaintiff's financial well-being and his relationship with his minor children" [*Id.* ¶¶ 12–13]. Plaintiff alleges that Judge Upchurch was engaged in an extra-marital affair with Stacey Farmer, plaintiff's then-wife, at the time of the alleged conspiracy [*Id.* ¶ 15].

Plaintiff also asserts state law claims based on his allegations that Attorney Radar and Judge Upchurch "misrepresented to [Judge] Smith the factual allegations regarding the

2

Plaintiff's marital situation . . . in an effort to dispose Plaintiff of his residence and to restrict his parenting time . . . to curry favor with the Plaintiff's wife and to cause mental harm to the Plaintiff and to hurt his standing in the community" [*Id.* ¶ 20]. Plaintiff states that these representations constitute fraud in violation of state law [*Id.* ¶ 21]. Plaintiff alleges that he did not learn of the defendant's fraudulent actions and conspiracy until August 2020 [*Id.* ¶ 26].

Defendants Judge Upchurch, Judge Smith, Attorney Radar, and Stacey Farmer, have all filed separate motions to dismiss this case, on numerous grounds [Docs. 24, 28, 34, 36].[1] As noted *supra*, plaintiff has not responded to any of the pending motions to dismiss.

## II.  Standard of Review

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal based on a lack of subject matter jurisdiction. Rule 12(b)(1) motions fall into two categories: "facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A facial attack is a challenge to the sufficiency of the pleading itself." *Id.* In considering whether jurisdiction has been established on the face of the pleading, "the court must take

---

[1] These defendants constitute all of the named defendants in this case. Notably, plaintiff previously filed an amended complaint [Doc. 40] without leave of Court, naming Bledsoe County as a defendant. In response, attorney B. Thomas Hickey entered a notice of appearance on behalf of Bledsoe County [Doc. 49]. Thereafter, the Court granted defendants' motions to strike the amended complaint [Doc. 52]. Accordingly, the original complaint [Doc. 1] remains the operative complaint, and Bledsoe County is not a defendant in this action.

3

the material allegations of the [pleading] as true and construed in the light most favorable to the nonmoving party." *Id*. (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id*. Here, the parties' Rule 12(b)(1) arguments are properly construed as a factual attack, as they contend that the Court lacks subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker-Feldman* doctrine. Notably, unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).

### B.      Rule 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party. *DIRECTTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions

4

masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotation marks omitted). Dismissal under Rule 12(b)(6) "is proper when there is no set of facts that would allow the plaintiff to recover." *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993); *see also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

## III.  Discussion

### A.  Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  As such, subject matter jurisdiction is a threshold issue that the Court must address and resolve prior to reaching the merits of the case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also* Fed. R. Civ. P. 12(h)(3) (providing that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").  Because defendants Judge Upchurch and Stacey Farmer allege that the Court lacks subject matter jurisdiction over this case [Doc. 35, p. 3; Doc. 37, pp. 2–3], the Court will first address this threshold matter.

5

### 1.     Domestic Relations Exception

Judge Upchurch appears to contend that this Court lacks subject matter jurisdiction over this case because the allegations involve a divorce case—a domestic relations matter [Doc. 35, p. 3].  Generally, federal courts lack jurisdiction over domestic relations matters, because state courts have exclusive jurisdiction over these matters.  *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003).  Although this exception to federal jurisdiction does not apply to a civil action that "merely ha[ve] domestic relations overtones," federal courts "lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues."  *Id.* (citing *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988)).

Typically, the federal courts refrain from entering domestic relations cases.  "Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court."  *Denman v. Leedy,* 479 F.2d 1097, 1098 (6th Cir. 1973).  Further, the Supreme Court has found that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States."  *In re Burrus,* 136 U.S. 586, 593–94 (1890).  Because state courts historically have decided these matters, they have developed a proficiency and expertise in these cases and a strong interest in disposing of them.  *Solomon v. Solomon,* 516 F.2d 1018, 1025 (3d Cir. 1985); *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981).

6

However, the Sixth Circuit has clarified that the domestic relations exception applies only to a narrow range of circumstances and "does not deprive federal courts of jurisdiction to adjudicate a claim . . . unless a plaintiff positively sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing divorce, alimony, or child custody decree." *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015)). For example, the domestic relations exception does not apply when a plaintiff requests that the federal court apply federal law to determine whether officials conspired against him in the course of administering a child support program, because this inquiry does not require application of state child custody law, question the state's calculation of child support payments, or otherwise address the merits of the underlying dispute. *Id*. at 1205–06. Accordingly, the fact that the alleged violations of federal law occurred in the course of deciding a plaintiff's child support obligations does not invoke the domestic relations exception. *Id*. at 1206.

The ultimate inquiry in determining the applicability of the domestic relations exception focuses on the remedy that the plaintiff seeks: "Does the plaintiff seek an issuance or modification of enforcement of a divorce, alimony, or child-custody decree." *Chevalier*, 803 F.3d at 797.

Here, the Court does not find that it lacks subject matter jurisdiction under the domestic relations exception to federal jurisdiction. Plaintiff has not positively sued in this Court for divorce, child custody, or alimony, and is not seeking modification or

interpretation of any such orders. *See Alexander*, 804 F.3d at 1205. Instead, plaintiff seeks

monetary damages [Doc. 1, p. 7], which are an appropriate remedy in a § 1983 cause of

action, if a plaintiff proves his claim. Ultimately, as in *Alexander*, plaintiff's request for

review of the defendants' alleged conduct in the underlying divorce proceeding does not

fall under the domestic relations exception because it does not require this Court to apply

state divorce law, question the state's divorce orders, or otherwise address the merits of the

underlying divorce dispute. *See* 804 F.3d at 1205–06. Accordingly, the Court finds that

the domestic relations exception does not divest the Court of subject matter jurisdiction

over this case.

### 2. *Rooker-Feldman* Doctrine

Defendants Stacey Farmer and Attorney Radar also argue that this Court lacks

subject matter jurisdiction under the *Rooker-Feldman* doctrine [Doc. 25, pp. 15–17;

Doc. 37, pp. 2–3].

The *Rooker-Feldman* doctrine arises out of two Supreme Court cases, *Rooker*

*v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v.*

*Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine specifically precludes

district courts from exercising appellate jurisdiction over final state court judgments.

*Persley v. Lee*, 794 F. Supp. 2d 728, 731 (E.D. Ky. 2011) (quoting *Lance v. Dennis*,

546 U.S. 459, 463 (2006)). The Supreme Court has clarified that the *Rooker-Feldman*

doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases

brought by state-court losers complaining of injuries caused by state-court judgments

8

rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Both the plaintiffs in *Rooker* and *Feldman* requested the district court "overturn an injurious state-court judgment" but only the Supreme Court has jurisdiction to review a state court's judgment. *Id.* at 292.

The Court must look at the source of the plaintiff's injury alleged in the federal complaint to determine whether a claim is one that attacks a state court judgment, and thus is within the scope of the *Rooker-Feldman* doctrine, or an independent claim over which a district court may assert jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* For a claim to fall within the *Rooker-Feldman* doctrine's scope, "the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *Id.* at 394.

To determine the source of a plaintiff's injury, the Court must look to the requested relief. *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 963 (6th Cir. 2021). The Sixth Circuit has held that, where a plaintiff alleged two categories of injuries, those stemming from an ex parte order itself and those stemming from the defendants' conduct in the preparation and issuance of the order, *Rooker-Feldman* only barred consideration of the first category of injuries, because they were based on allegations that were a direct

9

result of the judicial order. *Id.* (citing *Reguli v. Guffee*, 371 F. App'x 590, 595–96 (6th Cir. 2010)). The Sixth Circuit recently reaffirmed that the *Rooker-Feldman* doctrine bars a district court from considering claims when a state court's ex parte order is the main source of injury, but does not bar claims based on defendants' alleged conduct leading up to the issuance of the ex parte order or in executing the order. *Id.* at 963–64. Similarly, a plaintiff's claim that defendants committed fraud and misrepresentation in the course of state probate proceedings does not allege an injury caused by a state court judgment, and therefore, is not barred by *Rooker-Feldman*. *Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Servs.*, 606 F.3d 301, 310 (6th Cir. 2010) (citing *McCormick*, 451 F.3d at 392).

The Court concludes that plaintiff's claims are only partially barred by the *Rooker-Feldman* doctrine. Plaintiff alleges that Stacey Farmer and Attorney Radar presented false or misleading information to the state court [Doc. 1 ¶ 6]. He further contends that Judge Upchurch and Judge Smith are liable for both their "inappropriate communications" and the state court's "ultimate Order" [*Id.*]. Plaintiff states that he is seeking compensation for the injuries of the loss of his residence and mental anguish from the loss of parenting time with his three minor children [*Id.* ¶ 16]. It appears that plaintiff's claims as to Judge Upchurch and Judge Smith's issuance of the "ultimate Order" of the state court are barred by *Rooker-Feldman*, as the source of injury for such claims is clearly the state court's order. *See McCormick*, 451 F.3d at 393.

However, the Court does not find that plaintiff's claims regarding Stacey Farmer and Attorney Radar presenting false or misleading information to the state court or Judge

10

Upchurch and Judge Smith engaging in "inappropriate communications" are barred by the *Rooker-Feldman* doctrine. Specifically, these claims appear to involve these defendants' alleged conduct leading up to the issuance of the state court order, rather than the issuance of the order itself. *See Cunningham*, 842 F. App'x at 963–94. The Court finds that these allegations in the complaint are akin to the allegations in *Kovacic*—that defendants committed fraud and misrepresentation in the course of a state court proceeding—which the Sixth Circuit held is not barred by *Rooker-Feldman*. *See* 606 F.3d at 310. Accordingly, the Court finds that it may properly assert jurisdiction over these claims.

Accordingly, defendants' motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART** on this ground. Plaintiff's claims against Judge Upchurch and Judge Smith, based on the "ultimate Order" of the divorce court will be **DISMISSED** for want of jurisdiction. Plaintiff's remaining claims survive defendants' jurisdictional challenges. However, as discussed *infra*, even if the Court has jurisdiction over all of plaintiff's claims, they are nonetheless subject to dismissal under Rule 12(b)(6) for several alternative reasons.

### B. Section 1983 Claim

#### 1. Statute of Limitations

Attorney Radar and Stacey Farmer both contend that plaintiff's claims are barred by the applicable one-year statute of limitations for § 1983 claims, as the temporary restraining order at issue was served upon plaintiff in August 2019 [Doc. 25, pp. 10–12; Doc. 37, pp. 4–5].

11

The statute of limitations applicable to a § 1983 action is the statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Tennessee's statute of limitations for personal injury claims and for claims brought under federal civil rights statutes such as § 1983 is one year. *See* Tenn. Code Ann. § 28-3-104(a); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005).

"Federal law, however, controls the determination of when a civil rights action accrues." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000). The statute of limitations generally begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kovacic*, 606 F.3d at 307 (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (citations omitted). The Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Eidson*, 510 F.3d at 635 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

Notably, in his complaint, plaintiff states that he did not learn of defendants' "fraudulent actions and conspiracy against him until August 2020" [Doc. 1 ¶ 26]. Although he does not specify what court order allegedly harmed him, nor does he attach the order at issue, plaintiff contends that it was the "ultimate Order of the 12th Circuit Court of Tennessee depriving Plaintiff Farmer of his residence and parenting time with his three

12

minor children" [*Id.* ¶ 6]. Defendants contend that the underlying order is a temporary restraining order, which Attorney Radar provides to the Court as an attachment to his motion to dismiss [Doc. 24-2]. The temporary restraining order, signed by Judge Smith,[2] restrained and enjoined plaintiff from being around the marital home and restrained and enjoined plaintiff from exercising visitation inconsistent with the Court's temporary parenting plan or removing the children from Bledsoe County, Tennessee [*Id.* at 2]. Judge Smith signed this temporary restraining order on August 2, 2019, with a hearing to be held within two weeks [*Id.*]. The Court finds that, given the information provided in the complaint, this temporary restraining order is the state court order of which plaintiff now complains.

The Court further finds that plaintiff's § 1983 claims based on the issuance of this temporary restraining order are barred by the applicable statute of limitations. Despite plaintiff's claim that he did not learn of defendants' fraudulent actions and conspiracy until August 2020 [Doc. 1 ¶ 26], plaintiff learned of the temporary restraining order by, at the latest, mid-August 2019, when he received a copy of that order and a hearing was held on the order [*See* Doc. 24-2]. At the time when plaintiff learned of the order, he was on notice of his alleged injury, or at least should have exercised reasonable diligence to discover the source of his injury. *See Kovacic*, 606 F.3d at 307; *Sevier*, 742 F.2d at 273. Accordingly, the one-year statute of limitations for a § 1983 claim began to run in August 2019, and

---

[2] Judge Smith is a Circuit Court Judge serving Tennessee's 12th Judicial District. J. Curtis Smith, http://tncourts.gov/courts/circuit-criminal-chancery-courts/judges/j-curtis-smith (last viewed Nov. 29, 2021).

13

plaintiff's complaint, filed in July 2021, is barred by the state of limitations.  Because plaintiff's § 1983 claims are time-barred, defendants' motions to dismiss will be **GRANTED** on this ground, and plaintiff's § 1983 claims will be **DISMISSED**.

### 2.    Judicial Immunity

Judge Smith argues that he is entitled to absolute judicial immunity in this case, because his actions in the divorce proceeding were indisputably judicial acts [Doc. 29, pp. 3–5].  "It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).  "When a plaintiff alleges that a judge engaged in nonjudicial action, the court must consider whether the allegedly nonjudicial act is 'truly judicial' or one that simply 'happen[ed] to have been done' by a judge." *HLV, LLC v. Van Buren Cnty.*, 775 F. App'x 204, 211 (6th Cir. 2019).  But the application of judicial immunity is "simple and non-controversial" if the act is "paradigmatically judicial, such as resolving a dispute between two parties." *Id.* (citation omitted).  Moreover, the Sixth Circuit has specifically held that a state court judge's participation in ex parte communications, even if improper under Tennessee law, are nonetheless related to the judge's general judicial functions, including "the authority to issue an ex parte restraining order[.]" *Cooper v. Parrish*, 203 F.3d 937, 945–46 (6th Cir. 2000).

Here, the Court finds that all of plaintiff's federal claims against Judge Smith are barred by judicial immunity.  Plaintiff specifically alleges that Judge Smith violated his

14

civil rights by: (1) engaging in "inappropriate communications" with Judge Upchurch about plaintiff's divorce case; and (2) issuing the temporary restraining order in that case [Doc. 1 ¶¶ 10, 14–15].  As noted *supra*, a judge's involvement in communications with others regarding a case, even if inappropriate under Tennessee law, is nonetheless a judicial function.  *See Cooper*, 203 F.3d at 945–46.  Moreover, the issuance of a temporary restraining order in a divorce case is a quintessential judicial function.  Accordingly, the Court finds that all of the plaintiff's § 1983 claims against Judge Smith are based on judicial functions and are therefore barred by judicial immunity.  Judge Smith's motion to dismiss will therefore be **GRANTED** on this alternate ground, and plaintiff's § 1983 claim will be **DISMISSED** as to Judge Smith.

### 3.   Color of Law

Attorney Radar, Judge Upchurch, and Stacey Farmer all contend that they were not acting under "color of state law" in the course of the actions alleged in the complaint, and therefore, are not liable under § 1983 [Doc. 25, pp. 4–6; Doc. 35, p. 3; Doc. 37, p. 3].  Specifically, Attorney Radar contends that he served as a private attorney in the underlying divorce action [Doc. 25, pp. 4–6], Judge Upchurch contends that he was "neither the attorney nor the Judge involved in [the] divorce case," and is "[a]t best . . . a witness" [Doc. 35, p. 3], and Stacey Farmer argues that the complaint provides no indication as to how she "clothed herself with the authority of the state" [Doc. 37, p. 3].

In order to state a claim under § 1983, plaintiff must allege violation of a right promised by the Constitution and laws of the United States and must show that the

15

deprivation was committed by a person acting under color of state law. *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358–59 (6th Cir. 2001). "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Id.* at 359. Thus, "[t]he key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.*

"[A]ttorneys do not become state actors by representing state or local governments." *Horen v. Board of Educ. Of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009). Moreover, a private attorney, even if appointed by the court, does not act under color of state law for purposes of § 1983. *Whisnant v. Stokes*, No. 1:08-cv-229, 2008 WL 4763853, at *5 (E.D. Tenn. Oct. 28, 2008).

"If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper,* 203 F.3d at 952 n.2. The Supreme Court has held that that "[p]rivate parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983." *Dennis v. Sparks,* 449 U.S. 24, 29 (1980). But "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Id.* at 28. Rather, to plead a § 1983 conspiracy, plaintiffs must allege that: "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their

16

constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir. 2007). Furthermore "conspiracy claims must be pled with some degree of specificity and [] vague and conclusory allegations . . . will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (internal quotation marks omitted).

Here, it is clear that Judge Upchurch, Attorney Radar, and Stacey Farmer were not acting under color of state law during the conduct alleged in the complaint. First, although Judge Upchurch does hold an official position as a general sessions judge in Bledsoe County,[3] the complaint does not allege that Judge Upchurch took any actions in his capacity as a general sessions judge, such that he could be considered a state actor. The claims against Judge Upchurch are limited to allegations that he was having an affair with plaintiff's then-wife, Stacey Farmer, and engaged in "inappropriate communications" with Judge Smith, who presided over the divorce proceeding [Doc. 1]. Neither of these alleged actions appear to be in the course of performing any duties of the office of general sessions judge, nor is such conduct of such nature that it could not have occurred but for Judge Upchurch's official position. *See Waters*, 242 F.3d at 359.

Moreover, Attorney Radar merely acted as a private attorney for plaintiff's then-wife in the divorce proceedings. As the Court noted *supra*, even an attorney representing the state or appointed to represent a party by the state is not a state actor for

---

[3]   *See* Howard L. Upchurch, https://tncourts.gov/courts/general-sessions-courts/judges/howard-l-upchurch (last visited Nov. 29, 2021).

purposes of § 1983. *See Horen*, 594 F. Supp. 2d at 841; *Whisnat*, 2008 WL 4763853, at *5. If such attorneys with some connection to the state are not acting under color of state law for purposes of § 1983, it is not feasible that a privately retained divorce attorney could be deemed to act under color of state law merely by practicing law in the state divorce court. Furthermore, it appears that Stacey Farmer's involvement in this case was merely being the adverse party in the underlying divorce proceeding. And a private party does not act under color of state law in merely litigating a civil matter in state court. *See Sterling v. Trotter*, No. C2-01-528, 2002 WL 31409437, at *1 (S.D. Ohio Aug. 13, 2002) (noting that "the use of state courts by private litigants and their attorneys did not, by itself, amount to state action" for purposes of § 1983).

The Court does note that plaintiff appears to allege that Judge Upchurch, Attorney Radar, and Stacey Farmer acted in a conspiracy with Judge Smith, who was acting in his official capacity as general sessions judge during the divorce proceeding. However, although acting in a conspiracy with Judge Smith in his official capacity may transform defendants into state actors, *see Cooper*, 203 F.3d at 952 n.2, plaintiff must still sufficiently plead a conspiracy under § 1983 for this rule to apply. *See Revis*, 489 F.3d at 290. And here, plaintiff has not pleaded any of the elements of a § 1983 conspiracy claim with sufficient specificity. Instead, the complaint merely alleges that the parties conspired against him by presenting unspecified false information to the court, engaging in unspecified communications, and issuing an unspecified order [Doc. 1 ¶ 6]. Such allegations are insufficient to show, even at the Rule 12 stage, where plaintiff's allegations

18

are accepted as true, that defendants had a single plan, that they shared a conspiratorial objective to deprive plaintiff of his constitutional rights, or that an overt act was committed. *See Revis*, 489 F.3d at 290.

Accordingly, plaintiff has not pleaded a § 1983 conspiracy claim, and therefore, defendants Judge Upchurch, Attorney Radar, and Stacey Farmer cannot be deemed to have acted under color of state law for purposes of this action. Therefore, for this alternate reasons, defendants Judge Upchurch, Attorney Radar, and Stacey Farmer's motions to dismiss will be **GRANTED** and plaintiff's § 1983 claims against them will be **DISMISSED**.

### 4. Deliberate Indifference

Attorney Radar, Judge Upchurch, and Stacey Farmer argue that, although the complaint alleges that defendants showed "deliberate indifference" in violation of the Eighth and Fourteenth Amendments to the Constitution, a claim asserting deliberate indifference under these Amendments applies only to punishments of those convicted in criminal proceedings [Doc. 25, pp. 6–7; Doc. 35, pp. 4–5; *see also* Doc. 37, p. 5 (adopting the arguments of other defendants)]. Attorney Radar contends that there is no constitutional obligation to act without deliberate indifference to a private litigant in a divorce case [Doc. 25, p. 7].

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "[T]he Cruel and Unusual Punishments Clause has been incorporated against the states" through the Fourteenth

Amendment.  *Kelly v. Shoemaker*, No. 15-cv-2233, 2016 WL 2757547, at *2 (S.D. Ohio May 12, 2016) (citing *Robinson v. California*, 370 U.S. 660, 666 (1962)).  However, "[b]ail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government."  *Ingraham v. Wright*, 430 U.S. 651, 664 (1977).  *See also Ford v. Cnty of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) ("The Eighth Amendment, by its terms, applies only to post-conviction inmates," but pretrial detainees are "guaranteed the equivalent right . . . by the Due Process Clause of the Fourteenth Amendment").  Eighth Amendment cruel and unusual punishment claims "arise[] only in the context of incarceration or other punishment meted out by the government" because "the Cruel and Unusual Punishments Clause prohibits cruel and unusual *punishments*, and not mere conditions or treatment."  *Kelly*, 2016 WL 2757547, at *2 (emphasis in original).

Because claims relating to deliberate indifference are claims that arise under the Eighth Amendment's Cruel and Unusual Punishment Clause, *see generally Farmer v. Brennan*, 511 U.S. 825 (1994), it appears that, in referencing defendants' alleged deliberate indifference, plaintiff attempts to assert a § 1983 claim based on the alleged violation of his Eighth Amendment rights.  But, because a § 1983 claim for deliberate indifference in violation of the Eighth Amendment can only be raised by post-conviction inmates (or pretrial detainees under the Fourteenth Amendment), *see Ingraham*, 430 U.S. at 664; *Ford*,

535 F.3d at 495, plaintiff's claim, which stems from alleged losses of access to his home and parenting time with his children do not rise to the level of Eighth Amendment violations.  Accordingly, on this alternate ground, defendants Judge Upchurch's, Attorney Radar's and Stacey Farmer's motions to dismiss will be **GRANTED**, and plaintiff's § 1983 claim will be **DISMISSED** as to these defendants.

### C.    State Law Claims

Stacey Farmer argues that plaintiff has failed to plead his state law claim of fraud with particularity, as required by Federal Rule of Civil Procedure 9(b) [Doc. 37, pp. 5–7]. She states that the complaint "utterly fails to identify the particular fraudulent statement made to the state court and what the truth of the matter pleaded actually was," and therefore, plaintiff's state law claims should be dismissed [*Id.* at 7].

Under Federal Rule of Civil Procedure 9(b), if a plaintiff alleges fraud or mistake, he "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The Sixth Circuit has stated that Rule 9(b) requires a plaintiff to "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)) (internal quotation marks omitted).  In other words, Rule 9(b) requires a Plaintiff specify the "who, what, when, where, and how" of the alleged fraud.  *Id.*

21

Here, plaintiff alleges a state law claim of fraud [Doc. 1 ¶ 21], and specifically states that "Defendants Radar and Upchurch misrepresented to Defendant Smith the factual allegations regarding the Plaintiff's marital situation . . . in an effort to dispose Plaintiff of his residence and to restrict his parenting time with his minor children" [*Id.* ¶ 20]. However, plaintiff's complaint lacks any detail about the alleged fraud, other than conclusory statements. For example, plaintiff alleges that defendants made false claims or misrepresentations to Judge Smith but does not specify what statements were false or what the true facts were. These bare bones allegations of fraud are insufficient to meet Rule 9(b)'s heightened pleading standard. Thus, defendants' motions to dismiss will be **GRANTED** as to plaintiff's state law claim of fraud, and such claim will be **DISMISSED**.

Moreover, as this Court has noted, "a civil conspiracy claim is not a stand-alone claim." *Marshall v. ITT Technical Institute*, No. 3:11-cv-552, 2012 WL 1205581, at *4 n.4 (citing *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010) ("It is well settled in Tennessee that the tort of civil conspiracy requires underlying wrongful conduct, and that conspiracy, standing alone, is not sufficient to support a cause of action[.] If the underlying wrongful conduct is found to be not actionable than the conspiracy claim must also fail.")). Because plaintiff has not sufficiently stated a claim for fraud, to the extent that his complaint can be construed as raising a state law claim of conspiracy, such claim cannot stand on its own. Accordingly, because plaintiff's fraud claim will be dismissed, plaintiff's conspiracy claim must also be **DISMISSED**.

22

**IV.     Conclusion**

The Court acknowledges that defendants have raised numerous other grounds for dismissal, however, in light of the conclusions above, the Court finds it unnecessary to expend further judicial time and resources addressing each ground.  For the many alternate reasons discussed above, defendants' motions to dismiss [Docs. 24, 28, 34, and 36] are **GRANTED**.  Attorney Radar's motion to withdraw the portion of his motion to dismiss relying on service of process [Doc. 55] is **DENIED** as moot.   This matter will be **DISMISSED**.  A separate order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

23